A02A0492. SEGARS v. CLELAND et al.
(564 SE2d 874)

ELLINGTON, Judge.

Gwinnett County homebuilder Terry Segars appeals from the judgment awarded upon a jury verdict in favor of homeowners Cathy Cleland and her neighbors, Kathy and Thomas Nesbitt. In this nuisance suit, Segars built the Nesbitts' home in violation of county ordinances, infringing upon Cleland's property rights. Cleland sued Segars and the Nesbitts for constructing a nuisance, and the Nesbitts cross-claimed against Segars for fraud. The jury found in favor of Cleland on her claims and in favor of the Nesbitts on their cross-claim. For the reasons that follow, we affirm the judgment in favor of Cleland, but reverse the judgment as to the Nesbitts.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. . . . The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict.

(Citations and punctuation omitted.) *Kimball v. Perrier*, 229 Ga. App. 30, 31 (1) (492 SE2d 913) (1997).

So viewed, the evidence showed that Segars built a house too close to Cleland's home, in violation of Gwinnett County ordinances and subdivision requirements requiring a ten-foot distance between roof lines. In 1995, Segars, an experienced builder of over 100 houses, staked out the vacant lot next door to Cleland's home in preparation for pouring a foundation for a new house. Cleland noticed that the stakes were too close to her home. She notified Segars immediately, before the foundation was poured, but he responded in a threatening, intimidating, and demeaning manner. He used profanity and called her a "troublemaker" who did not know anything about building. Cleland asked Segars to confirm his plans to make sure they complied with county ordinances; however, he refused and persisted in build-

ing the house. In the meantime, Cleland called the county and confirmed that there was a requirement that houses be at least five feet from the lot lines and have at least ten feet between adjacent roof lines. Cleland obtained a stop work order from the county against Segars in August 1995.

Segars sought a variance from the county, admitting the distance between roof lines was 8.12 feet and stating that he had "forgotten" that there was a ten-foot roof line setback requirement. After pointing out that the ten-foot roof line requirement was recorded both as a general note and as an illustration on the subdivision plat, the county denied Segars' request. On appeal to the county Zoning Board of Appeals ("board"), Segars admitted he "goofed up," but complained that the house was now 60 percent complete. The board denied his request for a variance.

He then sent a letter to the county, again admitting that the roof lines were only eight feet apart, but telling the county he had a plan to allegedly bring the home into compliance. Segars planned to cut a large "notch" from the portion of the roof closest to Cleland's home and replace the shingles with siding. The county promptly notified Segars that his plan was not acceptable, reaffirming the roof line requirement is measured by running a line from front to back along each roof line and measuring the distance between houses at any point along that line. Segars appealed this administrative decision to the board. This time, Segars told the board that he had made a "mistake" in building the house too close to Cleland's home, but complained that it would present a hardship to adjust or remove the house at this point, since it was almost complete. Instead of ruling that the adjustments to the roof line would bring the house into compliance with the distance requirements, the board granted Segars a hardship variance. Segars cut the notch out of the roof and sold the house to the Nesbitts.

Cleland appealed the board's decision to the trial court,[1] contending the decision was arbitrary and capricious and that her property values were diminished by the board's arbitrary decision. As to Segars, Cleland claimed he wilfully and wantonly constructed a nuisance, and she requested compensatory damages, an injunction, attorney fees, and punitive damages. The trial court denied Segars' motion for summary judgment, finding that the board's decision should be reviewed for arbitrariness and that issues remained for jury determination as to the damages claims. In July 1999, the trial court reversed the board, specifically finding that the board's decision

---

[1] Additional relevant facts regarding the procedural posture of this suit are presented in *Cleland v. Gwinnett County*, 226 Ga. App. 636 (487 SE2d 434) (1997).

to grant a hardship variance lacked any evidentiary or legal support and "fits the very definition of *arbitrary and capricious* in every respect." (Emphasis in original.)

Cleland amended her suit to add claims against Gwinnett County, the Board of Commissioners, and the Zoning Board, alleging that the board violated her due process rights and that the board's actions were sufficiently wilful and wanton as to entitle her to punitive damages. In February 2000, Cleland further amended her complaint to add the Nesbitts, who had purchased Segars' house, contending they were put on notice of her claims through the filing of a notice of lis pendens on the property. The Nesbitts answered and denied notice of the lis pendens. They also filed a cross-claim for indemnity from the county and Segars, and against Segars for breach of warranty of title, fraud, attorney fees, and punitive damages.

On February 9, 2001, Cleland dismissed with prejudice her claims against Gwinnett County, the Board of Commissioners, and the Zoning Board after the parties reached a settlement. The remaining claims were tried by a jury, who awarded $30,000 in compensatory damages, $31,000 in attorney fees, and $81,742 in punitive damages on Cleland's claims against Segars; awarded $1 in nominal damages on Cleland's claims against the Nesbitts; and awarded $7,500 in compensatory damages and $8,200 in attorney fees on the Nesbitts' cross-claims against Segars. Segars appeals.

1. Segars contends there was insufficient evidence to support the jury's finding that a nuisance existed, as well as insufficient evidence to support the $30,000 in damages awarded to Cleland. Under OCGA § 41-1-1, "[a] nuisance is anything that causes hurt, inconvenience, or damage to another. . . . The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man."

In this case, the evidence supports a finding that Segars built the house in violation of Gwinnett County zoning requirements. This violation continues unabated, because simply cutting a notch from the roof did not bring the house into compliance with the county's requirements. Cleland presented evidence that the house, with its noncomplying, notched-out roof, is unsightly; reduces the curb appeal of her property; reduces her privacy, light, and air; reduces her property value upon resale or refinancing by approximately $10,000; and, because of the noncompliance with zoning requirements, will produce "incredible" problems with lenders upon resale.[2]

---

[2] Although Segars relies on *Oklejas v. Williams*, 165 Ga. App. 585 (302 SE2d 110) (1983), for the proposition that the loss of aesthetic value alone cannot support a nuisance cause of action, that case is distinguishable. In *Oklejas*, the offending structure was legal and the plaintiff's *only* complaint was its unsightly appearance.

Under OCGA § 51-12-2 (a), general damages are those presumed to flow from a tortious act and may be recovered without specific proof of any amount. Pursuant to OCGA § 41-1-4, a plaintiff in an action for nuisance may recover for both personal injury and property damage. *City of Atlanta v. Murphy*, 194 Ga. App. 652, 653 (1) (391 SE2d 474) (1990). "Damages for discomfort and annoyance caused to the owner . . . are separate and distinct from damage to the value of the realty." (Citation omitted.) Id. An award of damages for discomfort and annoyance is for the enlightened conscience of the jury and should not be disturbed if there is any evidence to support it. Id. at 654 (3); see also *Nichols v. Main Street Homes*, 244 Ga. App. 591, 595 (3) (536 SE2d 278) (2000); *Woodmen of the World &c. v. Jordan*, 231 Ga. App. 517, 519-520 (2) (499 SE2d 900) (1998). We find that there was evidence presented to support the jury's finding that Segars constructed a nuisance and to support the award of damages to Cleland.

2. Segars claims that, if Cleland was not entitled to an award on her nuisance claim, then she is not entitled to an award of attorney fees and punitive damages as a matter of law. Pursuant to our decision in Division 1, supra, this contention is without merit.

3. Segars contends there was insufficient evidence to support the jury's award of punitive damages to Cleland. Under OCGA § 51-12-5.1 (b), punitive damages may be awarded in a tort action if the plaintiff proves by clear and convincing evidence that "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

The evidence showed that, when Cleland attempted to avoid this problem by immediately notifying Segars that the house was too close to hers, Segars responded with hostility, profanity, and threats. Instead of simply checking the subdivision plat and revising his plans, he proceeded to build the house, forcing Cleland to secure a stop work order. He then applied for a variance and, when that was denied, attempted to perform an end-run around zoning requirements of which he had early, clear notice. This evidence shows sufficient clear and convincing evidence of wilful misconduct, oppression, and conscious indifference to the consequences to support the jury's award of punitive damages. OCGA § 51-12-5.1 (b); see *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 614 (1) (409 SE2d 501) (1991) (one purpose of punitive damages is to deter reprehensible conduct by the defendant).

Although Segars argues on appeal that punitive damages are inappropriate in this case because he complied with county ordinances, the evidence clearly showed that the house as built by Segars

*never* complied with county zoning requirements.[3] Accordingly, the cases he cites for this proposition are inapplicable herein.

4. Segars argues that the Nesbitts failed to present a prima facie claim of fraud and, also, that they failed to present any evidence of actual damages caused by the fraud. Having reviewed the evidence, we agree.

(a) In order to prove a fraud claim, a plaintiff must present evidence of an intentional misrepresentation of a material fact by the defendant upon which the plaintiff justifiably relied to his detriment. *Lester v. Bird*, 200 Ga. App. 335, 338 (1) (408 SE2d 147) (1991). In this case, the evidence showed that, when the Nesbitts looked at the house in January 1996, Mr. Nesbitt asked Segars why the roof was notched out. Segars told him that there had been a dispute about the placement of the house with the neighbor, but that it had been resolved. The Nesbitts signed a contract to purchase the house on January 8, 1996. On January 10, 1996, Cleland filed suit against Segars and the county. Cleland placed a notice of lis pendens on the property on February 14, 1996. The Nesbitts closed on the house the next day. Mr. Nesbitt testified that Segars never told them about the lawsuit and that they found out much later when Cleland mentioned it.

At trial, Mr. Nesbitt testified that they were seeking only nominal damages based upon Segars' misrepresentations, as well as attorney fees. There was no testimony about the alleged breach of warranty of title. Although the Nesbitts argued that they might incur substantial damages in the future if the trial court ordered the house to be removed, the trial court chose not to do so. The Nesbitts presented no evidence to support a finding of actual damages incurred as a result of the misrepresentation. In an action for fraud, the measure of damages is the actual loss sustained, and "[t]he question of damages cannot be left to speculation, conjecture and guesswork." (Citations and punctuation omitted.) *Kimball v. Perrier*, 229 Ga. App. at 33 (1). See also *Stiefel v. Schick*, 260 Ga. 638, 639 (2) (398 SE2d 194) (1990) (holding that nominal damages for fraud are improper, as the party must show that actual, not just nominal, damages flowed from the alleged fraud). Accordingly, the award of damages to the Nesbitts must be reversed.

(b) As the Nesbitts failed to establish any actual damages, their award of attorney fees also must be reversed. See *Minter v. Powell*, 152 Ga. App. 449, 452 (4) (263 SE2d 235) (1979).

---

[3] At most, the evidence shows that, after months of variance applications, denials, and appeals, Segars was given a hardship variance from the regulations, a variance which was later overturned on appeal as being an unauthorized, arbitrary, and capricious act of the board.

5. Segars complains the trial court erred by denying his motion for mistrial based upon certain statements by the trial court, complaining that the trial court prejudiced the case. This enumeration lacks merit.

The trial court's comments were made after Segars repeatedly suggested to the jury that the board had interpreted the zoning requirements in a way to find the house in compliance. The comments, which the record clearly shows were made outside the presence of the jury, reminded Segars that the trial court had already ruled that the board improperly granted a variance and that the board had not interpreted the zoning requirements at all or found Segars' house to be in compliance. Segars failed to establish any error or that he was prejudiced by this restatement, out of the presence of the jury, of the trial court's earlier ruling.

Further, there is no merit to Segars' complaint that the trial court made a statement in front of the jury that his counsel misrepresented to the jury the actions of the Zoning Board of Appeals. The trial court's statement was, in fact, true. Counsel initiated the discussion by stating in front of the jury that the board told Segars to "cut the roof off" and that this would solve the ordinance violation. The trial court stated that the board did not tell Segars to cut off the roof and immediately excused the jury and admonished counsel for his repeated, intentional misstatements. Having reviewed the context of the statements, we find no error.

6. Segars contends the trial court erred in failing to grant a directed verdict to him as a joint tortfeasor after Cleland dismissed her case against the county. We disagree.

On February 9, 2001, Cleland dismissed her appeal to the superior court as to defendants Gwinnett County, the Board of Commissioners of Gwinnett County, and the Zoning Board of Appeals of Gwinnett County. Segars contends that, pursuant to the dismissal of a joint tortfeasor, the trial court should have dismissed Cleland's claims against him. Cleland argued the county and Segars were not sued as joint tortfeasors, as she had different claims against each party which were combined in one suit, and that she never intended to release Segars when she voluntarily dismissed the county. The record clearly shows that the dismissal applied only to Cleland's claims against the county.

Unless a voluntary dismissal is based upon an adjudication on the merits, its effect "does not extend to any party not named therein." *Hedquist v. Merrill Lynch &c.*, 272 Ga. 209, 212 (2) (528 SE2d 508) (2000). See also *Miller v. Grand Union Co.*, 270 Ga. 537, 538 (1) (512 SE2d 887) (1999) ("only those parties *named* in the release will be discharged by that instrument") (citation and punctuation omitted; emphasis in original). The trial court properly deter-

mined that Cleland's claims against Segars survived her voluntary dismissal of her claims against the county.[4]

7. Pursuant to our decision in the preceding Divisions, Segars' remaining enumeration is moot.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Eldridge, J., concur.*

DECIDED MAY 8, 2002 — CERT. APPLIED FOR.

*Webb, Tanner & Powell, Anthony O. Powell, Matthew P. Benson,* for appellant.

*Fowler, Hein & Kreimer, Stanley E. Kreimer, Jr., Lefco & Blumenthal, Stanley M. Lefco,* for appellees.

---

[4] We reject Segars' argument that the dismissal of the Zoning Board as a party to the action effectively affirmed the Zoning Board's decision granting a hardship variance. The trial court reversed the Zoning Board's decision, and the trial court's decision was not appealed. Further, this enumeration is unsupported by any citation to legal authority and, therefore, is deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2).