A02A1120. C & F SERVICES, INC. v. FIRST SOUTHERN BANK et al.
A02A1121. FIRST SOUTHERN BANK v. C & F SERVICES, INC.
(573 SE2d 102)

ELLINGTON, Judge.

C & F Services, Inc., a home remodeling company, appeals from the denial of its motion for new trial following a jury verdict in favor of defendant First Southern Bank. C & F challenges several of the trial court's evidentiary rulings. C & F also complains that the amount of damages the jury awarded in its favor against defendant homeowner Milton Brown was not supported by any evidence. In a cross-appeal, the bank contends that the trial court erred in denying its motion to dismiss C & F's claims as barred by the doctrine of res judicata.[1] Because we find C & F's claims were not barred by res judicata and, further, that the trial court erroneously excluded relevant evidence that was vital to the plaintiff's case, we reverse and remand the case for a new trial.

The record shows that C & F based its claims on the following allegations: In July 1990, a fire damaged Brown's Stone Mountain home. In November 1990, Brown's insurance company issued a check for $148,964.18 jointly to Brown and his mortgage company, Commonwealth Mortgage Company. When Brown deposited the check into his account at First Southern Bank, it showed Brown's endorsement, as well as the alleged endorsement of a "Joseph Tipple," an officer of the mortgage company. Brown withdrew most of the money within a few days of the deposit.

In December 1990, Brown contracted with C & F to repair the fire damage for $125,000. Clarence Johnson was the president of

---

[1] The bank filed the cross-appeal to elicit a ruling on the res judicata issue in case this Court reversed the judgment and remanded this case for retrial.

C & F and served as the contractor for the project. After much of the contracted work had been completed, Johnson and Brown had a disagreement over what was required under the contract and Brown's failure to pay C & F as promised. Johnson refused to continue working on Brown's house.

In January 1991, the mortgage company contacted the bank about the insurance check and alleged that its endorsement had been forged. The mortgage company threatened legal action against the bank for negligently depositing the check with a fraudulent endorsement. After negotiating with the mortgage company, the bank agreed to ensure the repairs were completed on the home in exchange for the mortgage company's promise that it would release the bank from liability on the check.

On April 2, 1991, the bank asked Brown and Johnson, on behalf of C & F, to meet at its offices. According to Johnson, the bank informed him that the mortgage company was threatening to sue the bank for negligently handling the insurance check. The bank "begged" C & F to repair Brown's home to a livable state in order to satisfy the mortgage company and relieve the bank's potential liability on the check. Although Johnson told the bank that C & F would not work for Brown, the bank convinced Johnson to sign a new, superseding repair contract in exchange for its promise to freeze Brown's accounts and its assurance that C & F would get paid for the work. Under the contract, which was prepared by the bank, C & F would complete specific work on the home and secure a certificate of occupancy in exchange for $23,000. This amount was the approximate remaining balance of Brown's accounts with the bank. The bank paid C & F $13,600 for materials and other expenses. The bank monitored the progress of the work to ensure that it was performed satisfactorily. In May 1991, the bank determined that the repairs were complete. It did not give C & F a punch list or identify any problems with the company's work. C & F presented a certificate of occupancy to the bank, which the bank forwarded to the mortgage company in order to assure it that the repairs were "100% complete" so the mortgage company would release them from liability. When C & F requested the final payment under the April 1991 contract, however, it learned that Brown had been allowed to withdraw the remaining $9,400 from the bank. The bank refused to pay the balance on the contract, telling Johnson that C & F had to get the money directly from Brown. C & F filed a materialmen's lien against Brown's property. In refusing to pay C & F, Brown stated that C & F's work was unsatisfactory and alleged that he was forced to hire another contractor to repair some of C & F's work. Notably, the record also shows that, in December 1991, Brown convinced the con-

tractor to file a false materialmen's lien against the property for $20,000 so that Brown could avoid an impending foreclosure.

C & F sued Brown and the bank in 1992, alleging, among other things, breach of the December 1990 and April 1991 contracts, negligence, and conversion. In May 1994, the trial court granted partial summary judgment to the bank on the conversion claim, as well as on the associated claims of punitive damages and attorney fees. C & F voluntarily dismissed the action in June 1995 and filed a renewal action in December 1995. C & F added claims for fraud, Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act violations, and breach of fiduciary duty. The bank did not raise a res judicata defense in its answer to the renewed complaint. The bank filed a cross-claim against Brown. The parties conducted additional discovery, and the parties agreed to have the record from the previously dismissed case made part of the record in this case. The bank moved for partial summary judgment in 1996 but again did not raise the defense of res judicata. The trial court granted the bank's motion for summary judgment on C & F's claims of RICO violations, conspiracy, and breach of fiduciary duty. The trial court specifically denied summary judgment on the fraud claims, as well as the associated claims for punitive damages and attorney fees.

In September 1997, the trial court signed a superseding, comprehensive pre-trial order, in which C & F alleged that Brown had breached the April 1991 contract. C & F contended that Brown defrauded C & F by signing the contract with the knowledge that the bank had not frozen his accounts with the result that C & F would not be fully paid under the contract. C & F also asserted that the bank acted negligently in depositing the insurance check with a questionable endorsement and in releasing those funds to Brown; fraudulently induced C & F to enter into the April 1991 contract with Brown in order to avoid its liability to the mortgage company on the insurance proceeds; conspired with Brown to defraud C & F; breached its oral agreement to ensure that C & F was paid under the April 1991 contract; breached its fiduciary duty to C & F; committed fraud when it repeatedly assured C & F that it had frozen Brown's accounts; negligently allowed Brown to withdraw the remaining funds in his accounts when it knew that C & F had not been paid under the April 1991 contract; and breached its agreement to insure that C & F would be paid when he secured a certificate of occupancy. C & F specifically alleged that the bank had acted intentionally, negligently, or, at a minimum, recklessly; that it intentionally defrauded the company; that it acted maliciously and in bad faith; and that it had been stubbornly litigious. C & F raised both contract and tort claims and requested punitive damages and attorney fees. It also sued Brown under Georgia's RICO statutes, OCGA § 16-14-1 et seq.

In the same pre-trial order, the bank contended that it did not pay C & F the remaining funds under the April 1991 contract because C & F failed to properly complete the required work. The bank asserted that it had released the funds to Brown after Brown complained about the quality of C & F's repairs.

The case went to trial in September 1998, but resulted in a mistrial. A different judge presided over the second trial in August 2000. On the first day of trial, the bank attempted to have the fraud, punitive damages, and attorney fees claims dismissed on res judicata grounds. See Division 7, infra. The court ruled that it would allow these issues to go to trial. The court also confirmed that C & F would be allowed to read the deposition of mortgage company employee Joe Tipple into the record during trial. A jury was impaneled, and the court recessed for the afternoon.

The next morning, the bank moved to exclude as irrelevant all evidence of anything that transpired before April 2, 1991, the day Brown and Johnson signed the $23,000 contract. Over C & F's objections, and in direct conflict with the pre-trial order, the trial court abruptly decided to exclude the evidence, saying it did not want to "waste the time of the court." Specifically ruling that the only issue before the court was the April 1991 contract, the court excluded as irrelevant all evidence regarding the following issues: Brown's forgery of the insurance check;[2] the bank's negligent handling of the insurance check; the mortgage company's threat to hold the bank liable for the insurance proceeds; and any other transactions or communications between the parties that occurred before April 2, 1991. In addition, during the trial, the court refused to allow Johnson to explain why he signed the April 1991 contract; excluded the testimony of the bank's president regarding the bank's role in the controversy; excluded evidence that neither Brown nor the bank provided C & F a punch list of repairs to be performed after the certificate of occupancy was obtained; and excluded testimony about C & F's materialmen's lien or the false lien placed on Brown's property by his friend. C & F requested a mistrial, arguing that without this testimony it would be unable to prove its claims. The motion was denied.

After C & F rested its case, the trial court granted the bank's request for a directed verdict on the fraud, punitive damages, and attorney fees claims, finding that there was no evidence to support them. Later, the trial court refused to charge the jury on any tort principle, including negligence, duty, and diligence, even after counsel specifically reminded the court that issues of negligence were still

---

[2] In fact, the trial court even went so far as to find, as a matter of law before any evidence was presented, that Brown *did not* forge the mortgage company's endorsement on the insurance check.

before the court. In response, the court sua sponte directed a verdict for the defendants on the negligence claims. At the end of the trial, the jury awarded C & F $1,000 on its claims against Brown and found in favor of the bank on the remaining claims. In Case No. A02A1120, C & F appeals from the court's denial of its motion for new trial. In Case No. A02A1121, the bank cross-appeals.

### *Case No. A02A1120*

1. C & F contends the trial court erred when it granted the bank's motion in limine to exclude evidence of anything that occurred before April 2, 1991. We review the trial court's decision to admit or exclude evidence under the abuse of discretion standard. *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902-903 (2) (517 SE2d 365) (1999). We also recognize, however, that evidence which logically tends to prove or disprove a material fact in issue is relevant and all relevant evidence should be admitted for the jury's consideration unless its probative value is substantially outweighed by the danger of unfair prejudice. *Powell v. Alan Young Homes*, 251 Ga. App. 72, 74 (1) (554 SE2d 186) (2001) (every act or circumstance serving to throw light upon a material issue is relevant); *Dept. of Transp. v. Mendel*, 237 Ga. App. at 902 (2); *Turner Broadcasting System v. Europe Craft Imports*, 186 Ga. App. 286, 289-290 (4) (367 SE2d 99) (1988). "The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors." (Citation and punctuation omitted.) *Turner Broadcasting System v. Europe Craft Imports*, 186 Ga. App. at 289-290 (4).

Contrary to the court's apparent perception that this was simply a breach of contract case, it is clear from the record that, until the second day of trial, all parties understood and agreed that C & F was also pursuing tort claims based in fraud and negligence involving the defendants' conduct before and after the April 1991 contract. By abruptly excluding critical evidence, the court seriously compromised C & F's ability to prove these claims. Having considered the entire record of the case, including the erroneously excluded evidence, we conclude that the trial court abused its discretion in deciding to only admit evidence of transactions and events that occurred on or after April 2, 1991. Therefore, we remand the case for retrial.

2. We also find that the trial court erred in granting directed verdicts as to C & F's fraud, negligence, and punitive damages claims. Virtually all of C & F's evidence supporting these claims was erroneously excluded from trial and would have raised jury issues if properly admitted. See Division 1, supra.

3. C & F contends the jury's award of $1,000 against Brown on C & F's breach of contract claim was not supported by any evidence, since it was undisputed that $9,400 remained unpaid under the contract. Generally, in the absence of legal error, this Court affirms civil awards that are supported by any evidence. *Walker v. Bruno's, Inc.*, 228 Ga. App. 589, 590 (1) (492 SE2d 336) (1997). In this case, Brown and two other defense witnesses testified that C & F's work on Brown's home was unsatisfactory and required Brown to hire another contractor to repair some of C & F's work. The trial court, however, refused to allow C & F to present evidence that may have impeached Brown's credibility, such as evidence of Brown's alleged forgery of the insurance check, his breach of the December 1990 contract, and the false lien placed on his property by a friend. Because the trial court's erroneous exclusion of this evidence may have affected the amount of damages the jury awarded to C & F, we reverse the jury's award of $1,000 to C & F against Brown.

Because the remaining enumerated errors may recur at trial, we will address them here.

4. C & F argues that the trial court erroneously refused to allow counsel to cross-examine a bank officer regarding his conflicting testimony from the first trial. Even though a former bank employee repeatedly claimed he "could not recall" vital information, the trial court severely limited Johnson's ability to examine and impeach him. In fact, the trial court specifically admonished Johnson's counsel in front of the jury, saying, "You know very well that you are not allowed to impeach your own witness, [counsel]. You know that as well as I do. That's a principle of law."

The Supreme Court of Georgia has repeatedly held that a party can impeach its own witness with the witness' prior inconsistent statements. *Speed v. State*, 270 Ga. 688, 693 (20) (512 SE2d 896) (1999); *Wilson v. State*, 235 Ga. 470, 474 (1) (219 SE2d 756) (1975). Further, "prior inconsistent statements are admissible as substantive evidence when the witness is present at trial and subject to cross-examination." (Footnote omitted.) *Duckworth v. State*, 268 Ga. 566, 568 (1) (492 SE2d 201) (1997). Accordingly, the trial court erred in refusing to allow C & F to impeach the witness with his prior inconsistent statements.

5. C & F contends the trial court erred in refusing to allow it to introduce the testimony of an unavailable witness who testified at the first trial. The bank objected to the evidence, arguing that C & F had not established that the witness was unavailable and had not used reasonable diligence in locating the witness. C & F responded that it had started looking for the witness two weeks earlier and that it "appeared" he may have moved to Florida. Noting that the case had been on the trial calendar for six weeks, the court excluded the

evidence, finding that C & F had not used reasonable diligence in locating the witness.

"The determination as to the inaccessibility of a witness and a party's diligence in searching for a witness is within the sound discretion of the trial court and will not be disturbed unless a manifest abuse of discretion is shown." (Citations omitted.) *Tolbert v. State*, 239 Ga. App. 703, 704 (1) (521 SE2d 827) (1999). Under the circumstances presented, we find that the trial court did not abuse its discretion in excluding the evidence upon finding that C & F had failed to exercise due diligence.

6. C & F contends the trial court erred in refusing to allow it to apprise the jury of an admission in judicio made by the bank. In its answer, the bank had admitted that it had asked C & F and Brown to attend the April 2, 1991 meeting at the bank.

"OCGA § 24-3-30 provides that a party may avail himself of allegations contained in the other party's pleadings without the necessity of offering them into evidence. In fact, a party to a suit will not even be allowed to disprove an admission made in his pleadings without first withdrawing it from the record." (Citations omitted.) *Strozier v. Simmons U.S.A. Corp.*, 192 Ga. App. 601, 602-603 (385 SE2d 677) (1989). Even if the pleading is withdrawn, the opposing party may still use the evidence as an admission against interest. Id.; see also *R. D. Stallion Carpets v. Dorsett Indus.*, 244 Ga. App. 719, 724 (536 SE2d 523) (2000). Accordingly, even if the bank withdraws the admission in its pleadings prior to retrial, C & F will be able to use the statement during retrial as an admission against interest. *R. D. Stallion Carpets v. Dorsett Indus.*, 244 Ga. App. at 724.

### Case No. A02A1121

7. In its cross-appeal, the bank contends the trial court erred when it denied its motion to bar C & F from pursuing its claims for fraud, punitive damages, and attorney fees. The bank claims that, in 1994, the trial court granted partial summary judgment on C & F's conversion claim against the bank, as well as the associated claims for punitive damages and attorney fees. The court denied summary judgment on the breach of contract or negligence claims. Even so, the bank argues that this should bar C & F from pursuing fraud claims in its renewal action under the doctrine of res judicata. The bank, however, failed to raise this issue until April 1999. In between 1994 and 1999, several significant events occurred in this case: C & F dismissed the first case after the grant of partial summary judgment; C & F filed a renewal action asserting fraud, negligence, and breach of contract and asking for punitive damages and attorney fees; the bank answered without asserting a res judicata defense; the parties

conducted additional discovery; the bank moved for partial summary judgment in 1996, but did not assert the res judicata defense; the trial court specifically denied summary judgment on the fraud claims, as well as punitive damages and attorney fees; the trial court signed a pre-trial order, in which C & F realleged fraud, negligence, and breach of contract and again asked for punitive damages and attorney fees, and in which the bank failed to raise a res judicata defense; and the case went to trial in 1998 on these issues. Only after a mistrial occurred did the bank move to bar the claims upon retrial under the doctrine of res judicata based upon the 1994 grant of partial summary judgment on the issue of conversion.

Under these circumstances, we find the bank failed to timely raise the affirmative defense of res judicata. See OCGA § 9-11-8 (c) (res judicata is an affirmative defense that must be raised in responsive pleadings); *Hardy v. Ga. Baptist Health Care Systems*, 239 Ga. App. 596-597 (1) (521 SE2d 632) (1999) (res judicata may be raised in motions, including motions for summary judgment). The trial court did not err in denying the bank's motion.

8. The bank also contends C & F failed to state a claim on punitive damages. Based upon a review of the pre-trial order, we find this enumeration to be without merit.

*Judgment reversed in Case No. A02A1120. Judgment affirmed in Case No. A02A1121. Smith, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 18, 2002 

*Gary C. Harris*, for appellant.
*Derek H. Jones*, for appellees.
Milton Brown, *pro se*.