A07A1843, A07A1844. FIRST SOUTHERN BANK v. C & F
SERVICES, INC. (two cases).

(659 SE2d 707)

PHIPPS, Judge.

This is the second appearance of this case before us.[1] A contractor, C & F Services, Inc. ("C & F"), sued Milton Brown, a homeowner, and First Southern Bank ("the Bank") for breach of contract, negligence, fraud, and other claims arising from Brown's forgery of an endorsement on an insurance check and the Bank's attempts to avoid liability for releasing the proceeds to Brown. In the course of the first trial of C & F's action, a trial court excluded much of the evidence concerning the forgery and its immediate aftermath as irrelevant to C & F's breach of contract claim, after which a jury returned a verdict of $1,000 for C & F.[2] C & F then appealed to this Court, which reversed and remanded the case for a new trial on all the counts of the complaint, including fraud.[3] After retrial, the jury returned verdicts in favor of C & F for $24,238.22 against Brown and for $100,000 against the Bank. The jury also found that neither the Bank nor C & F had acted with specific intent to cause harm. The Bank now brings two identical appeals from the trial court's denial of its motion for new trial, arguing inter alia that the verdict was excessive.[4] We reverse the trial court and grant the Bank a new trial on compensatory damages in Case No. A07A1843, dismissing the identical appeal as redundant in Case No. A07A1844.

1. As a preliminary matter, we take up C & F's motions to dismiss, which argue that we lack jurisdiction because the Bank's first notice of appeal was untimely and filed before the entry of other appealable orders in the case. We disagree.

On February 7, 2007, the trial court denied the Bank's motion for new trial. The following day, the court awarded attorney fees to C & F in the amount of "two hundred fifty thousand dollars ($200,000)." On March 19, the trial court entered an order correcting this scrivener's error concerning the amount of fees to $200,000.

The Bank later filed a letter with the court indicating that it did not get notice of these orders until April 2007 and suggesting that the court might have authority to vacate its previous orders and enter new ones. At 2:32 p.m. on April 18, 2007, the Bank filed its notice of appeal from the February 7, February 8, and March 19 orders, later docketed in this Court as Case No. A07A1843. At 3:46 p.m. that same

---

[1] See *C & F Svcs. v. First Southern Bank*, 258 Ga. App. 71 (573 SE2d 102) (2002).

[2] See id. at 74-75.

[3] Id. at 75-76.

[4] Brown, who represented himself at trial, is not a party to this appeal.

day, the trial court entered a separate order purporting to set aside the February 7 order denying the motion for new trial.[5] On the following day, April 19, 2007, the trial court entered an order purporting to set aside the February 8 order awarding attorney fees to C & F and entered separate orders purportedly reinstating the orders denying the motion for new trial and awarding attorney fees to C & F.

The filing of the notice of appeal at 2:32 p.m. on April 18, 2007, however, acted as supersedeas and deprived the trial court of the power to amend, alter or modify the prior judgments.[6] It follows that the April 18 order filed at 3:46 p.m. purporting to set aside the motion for new trial, the April 19 order purporting to set aside the attorney fee award, and the two April 19 orders purporting to reinstate these orders were all void and without effect.

However, the March 19 order, which corrected a scrivener's error in the amount of attorney fees awarded in the February 8 order, was subject to direct appeal.[7] Thus the April 18 notice of appeal, which was filed within 30 days of the March 19 order, was timely. C & F's motions to dismiss are denied.

2. On the merits, the Bank argues that the trial court erred when it denied the motion for new trial because the amount of damages awarded was excessive. We agree.

"[W]e will not disturb a trial court's denial of a motion for new trial if there was any evidence to support the jury's verdict."[8]

> The question of damages is ordinarily one for the jury[,] and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case.[9]

> A trial court's approval of a jury verdict as to damages, moreover, creates a presumption of correctness that cannot be disturbed on appeal absent compelling evidence, and a reviewing court is powerless to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means.[10]

---

[5] See *Cambron v. Canal Ins. Co.*, 246 Ga. 147-148 (1) (269 SE2d 426) (1980).

[6] *Bryan v. Brown Childs Realty Co.*, 236 Ga. App. 739, 742 (2) (513 SE2d 271) (1999).

[7] See *Nodvin v. West*, 197 Ga. App. 92, 93-94 (1) (397 SE2d 581) (1990) (correction of judgment for clarification is a final judgment subject to direct appeal by a notice of appeal filed within 30 days of the clarifying order).

[8] *Aldworth Co. v. England*, 286 Ga. App. 1, 2 (1) (648 SE2d 198) (2007) (citation and punctuation omitted).

[9] OCGA § 51-12-12 (a).

[10] *Dickey v. Clipper Petroleum*, 280 Ga. App. 475, 479-480 (4) (634 SE2d 425) (2006) (punctuation and footnote omitted).

Viewed in the light most favorable to C & F, the record shows that in November 1990, after a fire in his house, Brown received a check for $148,964.18 from his insurer payable to Brown and his mortgage company. Brown deposited the check into his account with the Bank with apparent endorsements by both Brown and "Joseph Tipple," an officer of the mortgage company. Brown withdrew most of the funds soon afterward and hired C & F to renovate his house for $125,000. In December, Brown demanded additional features including new walls, two HVAC systems, a seven-person spa, and an intercom system, leading C & F to incur additional expenses. Soon after Brown went into default in January 1991, the mortgage company notified the Bank that the Tipple signature was forged.

On April 2, 1991, the Bank supervised a meeting between Brown and Clarence Johnson, the president of C & F, for the purpose of reaching an agreement to complete the restoration of the house, and in the hope that the mortgage company would not sue the Bank. The Bank promised that it would give C & F a new subdivision consisting of seven lots on which it could build houses to be sold for $150,000 or more each. At the Bank's urging, Brown and C & F signed a new agreement under which C & F would complete the renovation for the sum of $23,000 — an amount guaranteed by the Bank, but substantially less than the $45,000 Brown owed C & F for the expanded renovation. The Bank supervised C & F's continuing work on the house and later made two payments to C & F totaling $13,600. A certificate of occupancy was issued on May 3, 1991. In early June, C & F filed a materialmen's lien on the property for the remaining $9,400 owed it under the April 1991 contract.

At trial, C & F asked for $9,400 and interest in special damages and $350,000 in general damages. After the jury returned its verdict, including awards against Brown and the Bank, the trial court entered judgment on that verdict.

"General damages are those which the law presumes to flow from any tortious act; they may be recovered without proof of any amount."[11] Such damages "may be awarded on a fraud claim."[12] "In an action for fraud, the measure of damages is the actual loss sustained, and the question of damages cannot be left to speculation, conjecture and

---

[11] OCGA § 51-12-2 (a).

[12] *Zieve v. Hairston*, 266 Ga. App. 753, 759 (2) (c) (598 SE2d 25) (2004), quoting *Economic Exterminators of Savannah v. Wheeler*, 259 Ga. App. 192 (1) (576 SE2d 601) (2003) (punctuation omitted).

guesswork."[13] "The expression 'actual damages' is not necessarily limited to pecuniary loss, or loss of ability to earn money."[14]

The evidence adduced at trial does not authorize the jury's award of $100,000 against the Bank because C & F alleged and proved only economic harm in an amount substantially less than that award. Although C & F filed a materialmen's lien for only $9,400 after the issuance of the certificate of occupancy on the renovated Brown residence, Johnson testified at trial that the actual cost of finishing the job was $45,000 — a price he reduced to $23,000 in reliance on the Bank's fraudulent promises. But Johnson's testimony concerning the Bank's promise to give him seven undeveloped lots does not permit a finding that C & F would have made any specific amount of profit from the deal because that testimony does not specify how much the undeveloped lots were worth or what C & F's role in developing them would have been. Nor can we construe the jury's award of an additional $55,000 as punitive damages where (i) there was no charge on punitive damages, let alone proper guidance on the "clear and convincing evidence" required;[15] (ii) the verdict form did not pose the question of punitive damages except by quotation of OCGA § 51-12-5.1 (f), which requires a jury to find "specific intent to cause harm" before it can award punitive damages in excess of $250,000; and (iii) the proceedings were not properly bifurcated.[16] We therefore reverse the trial court's denial of the Bank's motion for new trial,[17] noting that any retrial should be limited to compensatory damages.[18]

---

[13] *Segars v. Cleland*, 255 Ga. App. 293, 297 (4) (a) (564 SE2d 874) (2002) (citations and punctuation omitted); see also *Kimball v. Perrier*, 229 Ga. App. 30, 33-34 (1) (492 SE2d 913) (1997).

[14] *Zieve*, supra (citation and punctuation omitted).

[15] See *H & H Subs v. Lim*, 223 Ga. App. 656, 658-659 (2) (478 SE2d 632) (1996) (reversing award of punitive damages for fraud when no instruction defined the "clear and convincing evidence" necessary to award those damages; the trial court is obligated to define this standard of proof "even in the absence of a request to charge") (citation and punctuation omitted).

[16] See OCGA § 51-12-5.1 (d) (1) ("In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict."), (d) (2) ("If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient."); *Conseco Finance Servicing Corp. v. Hill*, 252 Ga. App. 774, 778-779 (2) (b) (556 SE2d 468) (2001) (reversing punitive damages award where trial court failed to follow procedures laid out in OCGA § 51-12-5.1 (d)).

[17] See *Kimball*, supra (without evidence showing the extent of plaintiff's actual loss by making fraudulently induced lease payments that exceeded the fair rental value, the trial court erred in denying defendants' motion for judgment notwithstanding the verdict); compare *Economic Exterminators*, supra (where plaintiffs alleged that defendant exterminator's fraud caused termite damage to their house, and where jury made award of over $117,000 for cost of repair, general damages award of $11,166 was not improper).

[18] See OCGA § 51-12-12 (b) (if damages award is "clearly so inadequate or so excessive . . . as to be inconsistent with the preponderance of the evidence, the trial court may order a new

3. The Bank also argues that the trial court erred when it failed to allocate the fee award between successful and unsuccessful claims. The verdict form in this case did not specify any particular theory of recovery, however, asking the jury only whether Brown and the Bank were liable to C & F and whether either defendant acted with "specific intent to show harm." The form was the subject of extensive discussion at the charge conference, and the Bank did not object to the form at the conclusion of that conference, before it went out with the jury, or after the verdict itself was returned. Any error in the form's failure to lay out C & F's theories of recovery was thus induced, and we presume C & F to have recovered under all the theories laid out in its complaint, including breach of contract, negligence, and fraud.[19] The Bank therefore has no basis for complaining that the fee award did not allocate between C & F's different causes of action.

4. The Bank also argues that judgment should have been entered in its favor on its cross-claim against Brown because Brown, who appeared pro se, conceded in his closing argument that he should be responsible for any liability imposed against the Bank. It appears that the parties stipulated that Brown would assume such liability and that the trial court approved the stipulation. Our grant of a new trial on compensatory damages moots the issue, however.[20]

5. In Case No. A07A1844, the Bank asserts the same errors as those asserted in Case No. A07A1843. We therefore dismiss Case No. A07A1844 as redundant.[21]

*Judgment reversed in Case No. A07A1843 and case dismissed in Case No. A07A1844. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 14, 2008.

*Andre & Blaustein, Brendan J. McCarthy*, for appellant.
*Patricia D. Bernard*, for appellee.

trial as to damages only, as to any or all parties, or may condition the grant of such a new trial upon any party's refusal to accept an amount determined by the trial court"); *Spence v. Maurice H. Hilliard, Jr., P.C.*, 260 Ga. 107, 107-108 (1) (389 SE2d 753) (1990) (OCGA § 51-12-12 does not authorize a trial court to reduce a damages award and deny a motion for new trial).

[19] See *Cherokee Nat. Life Ins. Co. v. Eason*, 276 Ga. App. 183, 186-187 (2) (622 SE2d 883) (2005) (party's failure to object to instruction and verdict form presenting question of stubborn litigiousness to jury induced any error and waived objections on appeal).

[20] See *Automated Print, Inc. v. Edgar*, 288 Ga. App. 326, 331 (3) (654 SE2d 413) (2007).

[21] See *Waugh v. State*, 263 Ga. 692 (1) (437 SE2d 297) (1993).