**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**July 1, 2019**

# In the Court of Appeals of Georgia

A19A0223. IN THE INTEREST OF T. S., a child.                    DO-009

DOYLE, Presiding Judge.

Following the grant of his discretionary application, the father of T. S., who was 22 months old when he was taken into care, appeals the trial court's order terminating his parental rights. For the reasons that follow, we reverse.

On appeal from a juvenile court's order terminating parental rights, we view the evidence in the light most favorable to the juvenile court's ruling, and our review is limited to addressing the question of whether any rational trier of fact could have found by clear and convincing evidence that [the father's] rights should have been terminated. In this review, we must necessarily defer to the juvenile court's fact finding, weighing of the evidence, and credibility determinations.[1]

---

[1] (Punctuation omitted.) *In the Interest of T. A.*, 331 Ga. App. 92 (1) (769 SE2d 797) (2015).

Viewed in this light, the record shows that T. S. was taken into care in late 2015 when the maternal grandmother filed a complaint of inadequate supervision against the mother. The Department of Family and Child Services ("the Department") investigated and determined that the mother was using methamphetamine. Only the mother and maternal grandmother appeared at the dependency hearing, at which the mother testified that T. S. was the father's biological child even though he had not filed a petition to legitimate. When asked where the father lived, the mother stated that he lived in Tennessee with his mother, but he had been living at her residence as well; the mother stated the father failed to come to the hearing because of his job.

Based on the mother's drug usage, the Department recommended that the juvenile court temporarily place T. S. and his older half-brother, W. S., with the maternal grandmother until the mother completed a case plan.[2] The court entered a visitation schedule for the mother, and it directed that she pay $40 a week in child support to the grandmother. The court explained to the mother that its custody order was in place until the children turned 18 or when the mother completed her case plan

---

[2] Neither the mother, nor the half-brother, nor the half-brother's father are parties to this appeal.

and filed a motion with the court for return of custody. The trial court granted temporary custody to the grandmother in a provisional dependency order entered on February 23, 2016, nunc pro tunc to February 9, 2016. The dependency order notified "all parents" that in order to have custody returned they must obtain and maintain stable housing and income for a period of six consecutive months, complete a parenting class, visit the children, and pay child support, which the court directed the father to pay to the grandmother in the amount of $40 per week.

On April 12, 2017, the grandmother filed an omnibus motion to suspend visitation/motion for contempt for failure to pay child support against the mother. At the May 2, 2017 hearing on the grandmother's motion, she testified that she took the children to the mother's home for visitation every Sunday afternoon and had done so since the children were placed in her care. She testified that the father was there because he and the mother were married shortly after the dependency order was issued, and the father was rude to her at the visits, slammed doors, shouted, and cursed. The grandmother testified that T. S. did not understand what was going on with regard to any of the father's inappropriate behavior. The grandmother's testimony largely covered her interactions with and bad feelings toward the father and the father's and mother's arguments. The father appeared without counsel, and he was

not allowed to speak or take the stand. Thereafter, the trial court granted the grandmother's omnibus motion on May 9, 2017, nunc pro tunc to May 2, 2017.

On May 12, 2017, the grandmother moved for contempt for failure to pay child support against the father, which the juvenile court granted on July 28, 2017 nunc pro tunc to July 19, 2017. In the motion, the grandmother argued that the father had been ordered to pay $65 per week; in fact, the temporary custody order ordered him to pay $40 per week.

The trial court granted the motion and found that the father was $2,660 in arrears as of July 14, 2017, and ordered the father to pay $300 on July 19, 2017, and then pay $40 per week plus an additional $10 per week until the balance was paid.

On April 12, 2017, the grandmother also filed a petition for termination of parental rights against the father,[3] contending that he had for a period longer than twelve months (1) failed to comply with a decree of support and (2) failed to comply with the reunification plan; (3) that the children were dependent, and the dependency was likely to continue; (4) the children were being harmed by continuing to maintain visitation; and (5) it was in the children's best interests to terminate parental rights.

---

[3] The grandmother's petition also named the father of T. S.'s half-brother and the mother.

On September 15, 2017, nunc pro tunc to April 26, 2016, the court entered an order finding that service on the father of notice of the dependency hearing granting the grandmother custody had been perfected by publication. The father moved for reconsideration of this order, arguing that at the time of the dependency hearing, he had been residing with the mother and that the grandmother and the Department were aware of how to serve him in person. The juvenile court vacated the April 26, 2016 order, finding that the father was entitled to personal service because his whereabouts were known to the Department, personal service had not occurred, and thus no service of process of the initial dependency action filed against the father was made. Nevertheless, the juvenile court found "no other irregularity in that dependency action, [and] the dependency order regarding [T. S.] is otherwise left unchanged by this order."

At the September 19, 2017 termination hearing, the father appeared with counsel. The trial court entered an order terminating the father's parental rights on April 2, 2018. The trial court found that the father had administratively legitimated T. S. shortly after birth, but had failed to support the child from the time the child was removed from the mother until the petition to terminate was filed. The father also did not attempt to establish a visitation schedule with the child for the 16 months prior

5

to the termination hearing and did not file any action demanding custody. Thus, the court found T. S. dependent under OCGA § 15-11-310 (a) (3). The court also found that pursuant to OCGA § 15-11-310 (a) (5), T. S. was a dependent child due to "lack of proper parental care or control," largely based on the father and mother's arguments with the grandmother or their arguments with each other. The trial court also found that the father failed to pay child support for over 12 months under OCGA § 15-11-310 (a) (3).

1. As an initial matter, we must address whether the father timely filed his application for discretionary appeal from the juvenile court's order.[4] The juvenile court entered the termination order on April 1, 2018. Thereafter, the order was amended on April 24, 2018, stating that the termination hearing occurred on September 19, 2017, rather than June 6, 2017. The father's application for discretionary appeal of the termination order was filed on May 18, 2018, so it was timely as to the amended termination order but not as to the April 1 order.[5] Our courts

_____

[4] See *In the Interest of B. R. F.*, 299 Ga. 294, 298 (788 SE2d 416) (2016) (holding that an appellate court lacks jurisdiction over an untimely application for discretionary appeal).

[5] See OCGA § 5-6-35 (d) (an application for discretionary review must be filed within 30 days of entry of the complained-of order).

previously have determined that a trial court's entry of a corrected final order extends the time for filing an appeal or discretionary application based on the date the corrected order is entered.[6] Although the April 24 order arguably does not include a change to the final judgment or correction of error as facially significant as the changes made by trial courts in those cases, the juvenile court included a recitation of the multiple continuances that occurred between the original termination hearing date and the final hearing date in its amended order. We glean from this extended recitation that the trial court believed correcting the termination hearing date to be material to its order and intended this April 24 order to be its final order, and therefore, the discretionary appeal application was timely filed.[7]

---

[6] See *Underwood v. Underwood*, 282 Ga. 643, 644 (1) (651 SE2d 736) (2007) (order correcting the amount of life insurance policy in a final divorce decree resulted in an extension of time from which to file a timely discretionary application); *Morton v. Macatee*, 345 Ga. App. 753, 756, n.1 (815 SE2d 117) (2018) (trial court's entry of a corrected order substituting proper names rendered timely the discretionary appeal application filed within 30 days of the corrected order); *First Southern Bank v. C&F Svcs., Inc.*, 290 Ga. App. 304, 306 (1) (659 SE2d 707) (2008) (substituted order correcting scriveners error regarding the amount of judgment extended the time for filing the notice of appeal); *Nodvin v. West*, 197 Ga. App. 92, 94 (1) (397 SE2d 581) (1990) (order correcting omission of post-trial interest was amended and constituted an appealable final order).

[7] See e.g., *Underwood*, 282 Ga. at 644 (1); *Morton*, 345 Ga. App. at 756, n.1; *First Southern Bank*, 290 Ga. App. at 306 (1); *Nodvin*, 197 Ga. App. at 94 (1).

2. The father argues that the evidence was not sufficient to support termination of his parental rights and that termination was not in the child's best interest.[8]

(a) The trial court found that the father had "wantonly and willfully failed to comply for a period of 12 months or longer with a decree to support his . . . child that has been entered by a court of competent jurisdiction of this . . . state."[9] But the trial court had set aside the dependency order as to the father because it found that although the Department was aware of the father's whereabouts, it had failed to serve him properly. Therefore, the trial court erred by basing its finding of dependency on time during which the father had not been served[10]; moreover, at most five months

---

[8] The grandmother contends that the father failed to argue that he had not abandoned T. S.; however, the juvenile court found T. S. dependent based on OCGA § 15-11-310 (a) (3) and (a) (5). To the extent that the juvenile court intended to find him dependent under OCGA § 15-11-310 (a) (4), our holding that the court erred by making findings based on the dependency order after finding that the father was not properly served would also apply to any implicit findings under that Code section.

[9] OCGA § 15-11-310 (a) (3).

[10] Compare with *In the Interest of D. R. W.*, 229 Ga. App. 571, 574-576 (2) (494 SE2d 379) (1997) (holding that mother could not raise insufficiency of service of process because she was represented by counsel at the termination hearing and failed to raise the issue). To the extent that the father appeared at the May 2, 2017 hearing on the contempt motion and petition to suspend visitation as to the mother, he was not represented nor was he allowed to speak. Accordingly, that hearing did not constitute the father's first opportunity to raise the issue.

had passed since the father was properly served with anything related to the case, and during that time, he paid at least $1,020 in child support and cured the court's contempt order.[11]

(b) Again, because the trial court also found that T. S. was a dependent child due to lack of proper parental care or control based on time during which the father had not been served with the dependency petition, this finding is improper. First, the father cured the juvenile court's contempt order on failure to pay child support by the time of the termination hearing. The father also visited with T. S. from the time when he was removed until the mother's visitation was terminated in May of 2017, so at most, at the time of the hearing, he had not seen T. S. for the final three months prior to the hearing. Moreover, at the termination hearing, the father had rented his own home and had been living separately from the mother for most of the preceding four months. He was gainfully employed and had paid at least $1,020 in child support over the preceding few months. The father also started parenting classes in June and had completed ten out of fifteen at the time of the hearing.

---

[11] The father was served with the grandmother's petition to terminate parental rights in April 2017, and the termination hearing occurred on September 19, 2017.

Although it is apparent from the record that there are issues among the family members that needed to be addressed,[12] the juvenile court erred by terminating the father's rights after finding that he had not been served properly regarding the dependency petition or the order.[13] First, T. S. initially was taken into care based upon the mother's drug use, and there was no showing that the father had that same issue. Additionally, the father had progressed with his case plan, was living separate from the mother, and had cured the child support contempt by the time of the termination hearing. Thus, the trial court's specific finding that the dependency was likely to continue is not supported by clear and convincing evidence.[14]

(c) Because the juvenile court erred by finding that the statutory grounds for termination were met, we need not reach the issue of the best interest of the child under OCGA § 15-11-310 (b).

---

[12] The behavior upon which the juvenile court found dependency was centered on the interpersonal relationships of the mother, father, and grandmother, rather than any testimony about the father's relationship with T. S.

[13] Compare with *In the Interest of C. J. L. C.*, 293 Ga. App. 848, 853 (3) (668 SE2d 821) (2008).

[14] See *In the Interest of K. J.*, 226 Ga. App. 303, 303-306 (1) (486 SE2d 899) (1997) (reversing a termination order based on the juvenile court's finding that dependency was likely to continue because it lacked clear and convincing evidence).

3. Based on our holding in Division 2, we need not address the father's due process argument.

*Judgment reversed. Coomer and Markle, JJ., concur*.