### A08A2392. BREWER et al. v. PAULK et al.

(673 SE2d 545)

ELLINGTON, Judge.

Pursuant to a granted interlocutory appeal, Mona Brewer, Bobby Brewer, and their attorney, Louis Levenson (collectively "the Brewers"), challenge an order of the Superior Court of DeKalb County requiring them to pay over $1 million in attorney fees directly to the attorneys for Bishop Earl Paulk, Don Paulk, Chapel Hill Harvester Church, Inc., and Harvester Community Development Corporation, Inc. (collectively "the Paulks"). The Brewers contend the superior court erred in awarding attorney fees to the Paulks under OCGA § 9-15-14 (a) based upon its finding that the Brewers' suit completely lacked any justiciable issue of law or fact. The Brewers also contend the superior court erred in awarding the attorney fees directly to the Paulks' attorneys in an unapportioned lump sum and in refusing to allow the Brewers to cross-examine Paulk with evidence of his perjury conviction during the hearing on the issue of attorney fees. As more fully explained below, because the record reveals facts supporting justiciable issues of law in the Brewers' suit, we must reverse the award of attorney fees on those claims. Further, as the court failed to apportion the award with respect to specific claims, we must also vacate the remainder of the order and remand for a hearing to apportion the fee award.

The record shows that Mona Brewer and her husband Bobby Brewer sued the Paulks in the Superior Court of DeKalb County alleging that Bishop Earl Paulk manipulated his congregant and employee, Mona Brewer, into an affair with him from 1989 to 2003 by telling her it was her only path to salvation. Specifically, the Brewers alleged that Bishop Paulk abused his confidential clerical or pastoral relationship, as defined in OCGA § 23-2-58; abused his position as a "spiritual counselor" and self-proclaimed spiritual authority over Mona Brewer; and abused his unequal position of

power as her employer to seduce or induce her into a prolonged sexual relationship with him and with others in the church. In 12 counts, the complaint asserted the following claims against the Paulks: breach of fiduciary duty; loss of consortium and interference with family relations; negligence; failure to protect; negligent hiring and retention; failure to supervise; failure to warn; fraud; conspiracy; intentional infliction of emotional distress; and collection on a debt arising out of a loan Bobby Brewer made to the Paulks. The Paulks counterclaimed for libel; slander; damages to peace, happiness, and feelings; and emotional distress. The Paulks also filed motions for summary judgment and partial summary judgment. The trial court did not rule on these motions, however, because the Brewers dismissed the lawsuit without prejudice and refiled the case in the State Court of DeKalb County where it is currently pending. The Paulks then filed a motion for attorney fees pursuant to OCGA § 9-15-14 (a).

Following a hearing, the trial court, citing OCGA § 9-15-14 (a), held that the Brewers asserted claims to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. In support of its holding, the court found that Mona Brewer and Bishop Earl Paulk began a sexual relationship in late summer of 1989, which she terminated in 2003. The court held that Mona Brewer did not have a confidential relationship with Paulk, as defined in OCGA § 23-2-58. The court noted that Mona Brewer became a member of Chapel Hill Harvester Church in 1979; that Kirby Clements was assigned to be her pastor; and that Bobby Brewer became her pastor when the two were married. Finding that Mona Brewer had these two pastors, the court concluded that she did not establish a clergyman/congregant relationship with Paulk in the twenty-five years that she was a member of Chapel Hill Harvester Church, and that Paulk did not exercise a controlling influence over her will. The court concluded that Paulk was not Mona Brewer's "spiritual advisor such that he exercised undue influence over her free will not to engage in sexual activity with him and others over a 12- to 14-year period of time."

Citing OCGA § 16-2-3, the court noted that "[e]very person is presumed to be of sound mind and discretion but the presumption may be rebutted." The court also relied on OCGA § 16-2-5, which states that "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." The court concluded that Mona Brewer was of sound mind and intended the natural and probable consequences of her acts when she, "as an adult with no indicia of mental incompetency," engaged in a sexual relationship with Paulk.

The court noted that Mona Brewer deposed "that, as a cover to be at . . . Paulk's home day in and day out, she informed many people that it was her ministry to take care of Paulk and [his wife] in their old age." The court further concluded that Mona Brewer gave her consent to Bishop Paulk every time they had sex.

Mona Brewer argued Bishop Paulk had a fiduciary duty not to coerce or seduce her into sexual activity with him or other individuals to whom she was not married, while misleading her and advising her that it was the will of God. The court found that Mona Brewer in fact "had no expectation of 'salvation' when the sole purpose of the relationship was adultery and fornication"; that she stated "[s]he tried to talk to God about her decision of having a sexual relationship with . . . Paulk, but God did not answer her." The court also noted that Mona Brewer had never heard Bishop Paulk, or anyone else preaching from the church pulpit, condone extramarital sex. The court found that Mona Brewer could discern right from wrong. Therefore, the trial court concluded that there was no basis for any of Mona Brewer's claims.

As to Bobby Brewer's claim for loss of the society, companionship and consortium of his spouse, the trial court ruled that he had no basis in law for such a claim because Mona Brewer had engaged in an adulterous relationship with Bishop Paulk, and pursuant to OCGA § 51-1-17,[1] all such causes of action were abolished. The court also ruled that Bobby Brewer's claim for collection on a debt based on a real estate transaction between himself, Bishop Paulk, and the church had no basis in law or fact, because Paulk had in fact repaid the loan. Based on the foregoing analysis, the trial court awarded the Paulks over $1 million in attorney fees pursuant to OCGA § 9-15-14 (a) and ordered the Brewers to pay those fees to the defendants' attorneys.

1. The Brewers contend the court erred in awarding attorney fees under OCGA § 9-15-14 (a) because their suit presented justiciable issues of law and fact. OCGA § 9-15-14 (a) provides:

> In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could

---

[1] OCGA § 51-1-17 provides: "Adultery, alienation of affections, or criminal conversation with a wife or husband shall not give a right of action to the person's spouse. Rights of action for adultery, alienation of affections, or criminal conversation are abolished."

not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

This Court will affirm a lower court ruling made pursuant to OCGA § 9-15-14 (a) if there is "any evidence" to support it. *Haggard v. Bd. of Regents*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987). However, if the party defending against the motion advances a justiciable issue of law or fact and produces evidence to support it, it is error for the trial court to award fees under OCGA § 9-15-14 (a). *Kendall v. Delaney*, 283 Ga. 34, 36 (656 SE2d 812) (2008).

(a) The Brewers contend the trial court erred in finding that Mona Brewer did not have a confidential relationship with Bishop Paulk and that Mona Brewer "consented" to the relationship. We agree. Contrary to the trial court's finding that there was no evidence that Bishop Paulk was Mona Brewer's pastor or spiritual advisor, he twice admitted in his verified answer that he was her "spiritual advisor, minister, pastor and reverend." OCGA § 24-3-30 provides that "[w]ithout offering the same in evidence, either party may avail himself of allegations or admissions made in the pleadings of the other." This means that the Brewers were not required to put forth *any* evidence to prove that Bishop Paulk was Mona Brewer's "spiritual advisor, minister, pastor and reverend." Id.; *Greene v. Gulf Oil Corp.*, 119 Ga. App. 87, 89 (2) (166 SE2d 626) (1969). However, the Brewers did not rely on the admissions alone. Both Mona and Bobby Brewer deposed that Bishop Paulk was their spiritual leader, that God spoke to them through him, and that Bishop Paulk's authority over them was a matter of divine revelation. Both deposed that Paulk led Mona Brewer to believe she was called to be in a sacred, sexual relationship with Bishop Paulk to keep him and his ministry alive. Both described Paulk's powerful, charismatic presence as the bishop and leader of an evangelical ministry. Bishop Paulk also acknowledged in his deposition that, as part of his pastoral duties, he had counseled the Brewers in his home for marital problems, and that he had talked with Mona Brewer about her marital problems, treating those communications as confidential.

Under Georgia law,

[a]ny relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a

VALE LAW LIBRARY

30

controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

OCGA § 23-2-58. A court or jury may find that a clergyman occupies a confidential relationship toward a member of his church. *Bryan v. Norton*, 245 Ga. 347, 348 (1) (265 SE2d 282) (1980); *Auburn Maranatha Institute v. Georgia Korean Church*, 232 Ga. App. 415, 415-416 (1) (501 SE2d 846) (1998). Further, an actionable breach of fiduciary duty may arise when a confidential relationship is abused for purposes of sexual gratification. See *Tante v. Herring*, 264 Ga. 694, 695-696 (2) (453 SE2d 686) (1994) (a jury could find that a breach of fiduciary duty occurred when attorney abused his position of trust to conduct an extramarital affair with a client).

In this case, there was evidence from which a factfinder could have found that Bishop Paulk had a confidential relationship with Mona Brewer, and, therefore, owed her a duty of utmost good faith and loyalty. There was evidence that Paulk was "so situated as to exercise a controlling influence over the will, conduct, and interest of another." OCGA § 23-2-58. Thus, whether Mona Brewer consented to the sexual relationship would be irrelevant when Bishop Paulk was, by virtue of his confidential relationship, in a position to manipulate her into giving that consent. See *Tante v. Herring*, 264 Ga. at 695-696 (2). Nevertheless, Mona Brewer also put forward evidence of Bishop Paulk's charismatic nature and his ability to control and coerce using his spiritual authority, all of which is evidence in rebuttal of the presumptions of "sound mind and discretion" relied upon by the trial court in OCGA §§ 16-2-3 and 16-2-5. Finally, Bishop Paulk admitted in his answer that he had a legal duty not to engage in sexual conduct with Mona Brewer. And, he also testified that it is "obvious" that he should not have had a sexual relationship with Mona Brewer because she was married.

The foregoing demonstrates that the Brewers put forward evidence that Bishop Paulk was in a confidential relationship with Mona Brewer as her spiritual advisor and pastor and that Bishop Paulk abused that position of spiritual authority to coerce or seduce Mona Brewer into consenting to a prolonged sexual relationship with him. Therefore, the Brewers stated cognizable claims against the Paulks arising out of a breach of fiduciary duty.

(b) Contrary to the court's order, Bobby Brewer's loss of consortium claim was not based on abolished torts, but on Bishop Paulk's alleged breach of a fiduciary duty arising out of his abuse of a confidential relationship. See *Erickson v. Christenson*, 99 Ore. App. 104, 107 (781 P2d 383) (Or. Ct. App. 1989) (explaining that harm

arose from misuse of position of trust and breach of fiduciary duty and not from abolished claim of seduction). Therefore, because the Brewers advanced justiciable issues of law as to those claims and produced evidence to support their position, it was error for the superior court to award attorney fees under OCGA § 9-15-14 (a) with respect to Bobby Brewer's loss of consortium claim. *Kendall v. Delaney*, 283 Ga. at 36.

2. The Brewers do not challenge the court's finding that Bobby Brewer's claim for collection on a debt based on a real estate transaction between himself and the Paulks had no basis in law or fact because the Paulks had, in fact, repaid the loan. However, the Brewers contend the entire award of fees must nevertheless be set aside because the court erred in failing to apportion the award of fees and by awarding the fees directly to the Paulks' attorneys. We agree.

The trial court failed to specifically address each of the 12 counts of the complaint or to make a specific finding that *all* the claims were frivolous for the reasons stated in its order. Further, the trial court failed to apportion fees between those incurred in defending against the claims deemed frivolous and any that were not. Therefore, we cannot tell from the court's order what amount of fees would be appropriate with respect to Bobby Brewer's claim on a debt or as to any other remaining claim. As we have held in cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees award "to those fees incurred because of [the] sanctionable conduct." *Harkleroad v. Stringer*, 231 Ga. App. 464, 472 (6) (499 SE2d 379) (1998). "Lump sum" or unapportioned attorney fees awards are not permitted in Georgia. *Huggins v. Chapin*, 233 Ga. App. 109 (503 SE2d 356) (1998). Consequently, we must vacate the remainder of the order and remand for a hearing and for findings of fact with respect to the amount of attorney fees to be assessed.

We also note that any award of fees or expenses under OCGA § 9-15-14 (a) "shall be awarded to any *party*" and not directly to the attorney for the party. (Emphasis supplied.) Id. The court may, of course, specify the amounts due to each attorney or law firm, but the award itself, as specified in the statute, is for the benefit of the party litigant. Id.; see *Betallic, Inc. v. Deavours*, 263 Ga. 796 (439 SE2d 643) (1994) (recovery limited to "a prevailing party") (citation and punctuation omitted).

3. The Brewers' remaining enumerations of error, each of which relate to the issues decided in Division 1 of this opinion, are moot.

*Judgment reversed in part and vacated in part, and case remanded with direction. Miller, C. J., concurs. Blackburn, P. J., concurs specially.*

BLACKBURN, Presiding Judge, concurring specially.

I concur fully in the opinion but write separately to clarify the rationale for the holding in Division 1 (b). Citing an Oregon case (*Erickson v. Christenson*[2]), we hold that the husband's loss of consortium cause of action was not based on abolished torts, but on the bishop's alleged breach of fiduciary duty arising out of his abuse of a confidential relationship. I wish to emphasize that the key cause of action brought by the wife arises out of the confidential relationship that the bishop allegedly had in regards to her; she is not simply suing for seduction or some other cause of action that is not tied to or dependent on the spiritual confidential relationship she had with the bishop. Therefore, just as the fiduciary nature of her relationship to the bishop causes her claim against the bishop to survive, so does this fiduciary relationship also cause her husband's claim to survive. He is not simply suing for alienation of affection caused by an adulterous relationship, which cause of action was abolished by OCGA § 51-1-17; rather, just as his spouse, he is suing for additional damages caused by the bishop's same breach of his fiduciary duties arising out of that confidential relationship. In other words, the husband's cause of action is simply another form of damages caused by the underlying tort (as recognized in the majority's opinion) of breach of fiduciary duty.

DECIDED FEBRUARY 11, 2009.

*Hasty, Pope & Ball, Marion T. Pope, Jr., John F. Salter, Jr., Roy E. Barnes*, for appellants.

*King & Yaklin, Stephen A. Yaklin, Matthew M. Wilkins, Gray, Hedrick & Edenfield, Lloyd B. Hedrick, Jr.*, for appellees.

---

[2] *Erickson v. Christenson*, 99 Ore. App. 104, 107 (781 P2d 383) (Or. Ct. App. 1989).