**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 15, 2018**

# In the Court of Appeals of Georgia

A18A0514. MORTON v. MACATEE.
A18A0515. MORTON v. MACATEE.

DILLARD, Chief Judge.

In these consolidated appeals, Machelle P. Morton—f/k/a Machelle P. Macatee—appeals from the trial court's order in a contempt proceeding following her divorce from her ex-husband, Edward Van Macatee, and from the court's order correcting a clerical mistake in the final divorce decree. In Case Number A18A0514, Machelle appeals from the "corrected" divorce order, arguing that (1) the trial court's factual findings, as contained in the original divorce order, are unsupported by the record; (2) the court erred in assessing attorney fees against her without a statutory basis or findings of fact in support of same; and (3) the "corrected" order contains additional factual errors. In Case Number A18A0515, Machelle appeals from the trial

court's order on competing petitions for contempt, arguing, *inter alia*, that the order constitutes an impermissible modification of the divorce decree outside the term of court. For the reasons set forth *infra*, in Case No. A18A0514, we affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion; and in Case No. A18A0515, we reverse.

The record shows that Van and Machelle were married in April 2011, and separated in March 2015. At the time of their separation, they had separate IRA accounts ("Machelle IRA" and "Van SEP"), and shared a Keogh retirement account and a joint savings account designated as the "Emergency Fund" account. A few months later (on May 19, 2015), Machelle petitioned for divorce. Then, following a bench trial on January 3, 2017, the court entered its final judgment and decree of divorce, in which it stated:

> As for the division of the retirement accounts (Emergency Fund, Joint Emergency Fund, SEP-IRA and [Keogh]) this court finds, based on the evidence submitted and arguments of counsel, the amount to be divided is $390,493.00. That is to be divided in half between the parties ($195,246.50 each) with the following adjustments:
>
> [Machelle's] ½ interest shall be reduced by $30,000.00 to give [Van] credit for his contributions to the marital property and the Home Equity Line of Credit.

2

[Machelle's] ½ interest is further reduced in the amount of $10,000.00 to give [Van] credit for the charges [Machelle] made to his American Express credit card which then brings her ½ interest down to $155,256.50.

[Van] is also awarded attorney's fees in the amount of $7,056.20 and expenses of litigation in the amount of $500.00 which brings [Machelle's] ½ interest further down to $147,690.30.

[Van] shall pay $147,690.30 in full to [his] attorney's escrow account, and [his] attorney shall then disburse the amount in full to [Machelle] all within 30 days of the date this order is signed. [Van] retains ownership of the accounts and [Machelle] shall indemnify and hold [him] harmless of the same upon payment of the amount stated herein to [Machelle's] attorney.

Thereafter, Van insisted that Machelle accept the $147,690.30 in the form of a transfer from his IRA to her IRA on the basis that he would suffer tax consequences if he withdrew the amount from his IRA. When Machelle refused a transfer by this method, the parties contacted the trial court for clarification of its order, and the court responded by email that:

Necessarily included in th[e] finding was that no one party would bear the tax liability on the tax deferred money nor would any one party get the benefit of only taking his or her share from the already-taxed

3

proceeds account[.] I no longer have the exhibits in front of me to know what was in each account, but the intent was for everyone to share in the tax deferred money (and any related liability) and the taxed proceed money equally. I did not intend to create a one-sided windfall or one-sided liability for either party.

In response to this email, Van again requested that Machelle execute a "Transfer Due to Divorce" form, indicating to which IRA account Machelle wanted the money transferred so that it would be a nontaxable event. But Machelle refused to sign the form, asserting that the trial court's divorce decree directed Van to pay the amount owed to Machelle into his attorney's escrow account before being paid to her.

On March 1, 2017, Van filed a contempt action, seeking to have Machelle held in contempt for failing to sign the transfer form. Machelle answered and counterclaimed, seeking to have Van held in contempt for intentionally failing to abide by the plain terms of the divorce decree—*i.e.*, by refusing to pay $147,690.30 into his attorney's escrow account for her benefit. Following a hearing on the competing contempt motions, the trial court declined to hold either party in willful contempt. But due to the parties' confusion regarding the division of the various accounts, the trial court stated that it would "clarify" the divorce decree within the contempt-motion order.

4

The trial court first noted that there was a scrivener's error made in the decree when enumerating the different names of the parties' accounts, and that the names of the accounts should have been titled as "Emergency Fund, [Keogh], Machelle IRA and Van SEP." Second, the trial court acknowledged that the divorce decree was silent as to potential tax liability:

> [I]t is clear from the record in this case and in the original divorce case that the Court's intent was to divide the parties' funds contained in the four accounts equally (subject to the offsets to [Machelle's] share previously mentioned). . . . [And] it was always the Court's intention to put each of the parties on equal footing. No one party was to bear the tax liability on any tax deferred money alone, nor would any one party get the benefit of only taking his or her share solely from any already taxed proceeds/cash accounts. The Court never intended to create a one-sided windfall or one-sided liability for either party.

Thus, the court ordered that Machelle's $147,690.30 be paid to her as follows:

> The [Emergency Fund] account, which the Court understands to be the only cash account and which should have contained the $110,000 which was added back in by the Court previously, shall be split 50/50. [Van] is ORDERED to pay one-half of that account to [Machelle] which should amount to approximately $55,549.50 within ten (10) days of the signing of this order.

5

The Machelle IRA account, which the Court understands to be a tax deferred account and already in [Machelle's] name and under her control is awarded to her. At the time of the contempt hearing, that account contained approximately $44,032. . . .

The remaining balance owed to [Machelle] of approximately $48,108.80 may be paid out of either the [Keogh] account or the Van SEP account or both. Because the Court understands both of these accounts to be tax deferred accounts, it is hereby ORDERED that the transfer of these funds be done in such a way so as to not create a tax liability for either party if possible. In the event there is an unavoidable tax penalty, that burden shall be shared equally between the parties. Both parties shall sign any and all documents and releases necessary to effectuate the rollover of these funds to [Machelle]. This shall be done within thirty (30) days of the signing of this order.

On the same day, June 26, 2017, the trial court also entered a separate order correcting the clerical mistake in the divorce decree to reflect the proper names of the accounts but specifying that all other provisions would remain the same. Machelle then filed applications for discretionary appeal to these two orders, which we granted. Her appeals follow. We will address each case and its specific enumerations of error separately.

1. In Case No. A18A0514, Machelle appeals from the "corrected" divorce order and argues that (1) the trial court's factual findings as to the starting amount of funds to be distributed are unsupported by the record; (2) the court erred in assessing attorney fees against her without a statutory basis or findings of fact in support of same; and (3) the "corrected" order contains an additional factual error in its reference to the parties' accounts. We will consider each of these contentions in turn.[1]

(a) Machelle first asserts that the trial court's "corrected" divorce decree, which merely altered the names of the relevant accounts, maintains factual findings from the

---

[1] We have jurisdiction to entertain these questions on appeal because the trial court's corrective action constituted a final order, and Machelle timely filed an application for discretionary appeal within 30 days of entry of the "corrected" order, permitting her to assert error as to the original divorce decree. *See Underwood v. Underwood*, 282 Ga. 643, 644 (1) (651 SE2d 736) (2007) ("This corrective action constituted a final order which is directly appealable. [Because] Husband filed his application for discretionary appeal within 30 days of entry of that final appealable order, it was timely." (citation and punctuation omitted)); *First S. Bank v. C. & F. Servs., Inc.*, 290 Ga. App. 305, 305-06 (1) (659 SE2d 707) (2008) (holding trial court's order correcting scrivener's error contained in earlier order was subject to direct appeal); *Nodvin v. West*, 197 Ga. App. 92, 94 (1) (397 SE2d 581) (1990) ("Such corrective action constituted a final order which is directly appealable.").

original order that are unsupported by the record. Specifically, she challenges the trial court's finding that the "starting point" for the division of monetary assets was $390,493.00. But Machelle abandoned this enumeration of error by failing to provide a single citation to authority as required by the rules of this Court.[2]

(b) Next, Machelle argues that the trial court's award of attorney fees to Van in the amount of $7,056.20 and expenses of litigation in the amount of $500.00 was unsupported by the record. We agree.

---

[2] *See Robinson v. Robinson*, 239 Ga. 323, 323 (1) (236 SE2d 660) (1977) (deeming argument abandoned for purposes of appeal when it was not supported by argument or citation of authority as required by rules); *Savage v. Savage*, 234 Ga. 853, 856 (218 SE2d 568) (1975) (same); *Wolf v. Middleton*, 305 Ga. App. 784, 790 (2) (700 SE2d 598) (2010) ("The [appellants], however, failed to support this claim of error with citation to legal authority or legal analysis, as required by Court of Appeals Rule 25 (c) (2). Therefore, this claim of error is deemed abandoned."); *Smith v. State*, 214 Ga. App. 631, 633 (4) (448 SE2d 906) (1994) (deeming argument abandoned when it was not supported by legal authority); *Patterson v. Prof'l Res., Inc.*, 140 Ga. App. 315, 316 (3) (231 SE2d 88) (1976) ("[When], as here, the brief contains nothing more than a statement of contentions unsupported by citation of legal authority, the enumerations of error must be deemed abandoned under Rule [25 (c) (2)] of this court."); *see also* Court of Appeals Rule 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."). *See generally Flowers v. State*, 269 Ga. App. 443, 445 (1) (604 SE2d 285) (2004) ("As we have explained, legal analysis is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." (punctuation omitted)).

Under OCGA § 9-15-14 (a), a trial court shall award reasonable and necessary attorney fees when a party has asserted a position that lacked any justiciable issue of law or fact so that it could not reasonably be believed that a court would accept it. The court may also award attorney fees under OCGA § 9-15-14 (b) if it finds that a party brought an action or raised a defense that lacked substantial justification, brought an action for delay or harassment, or unnecessarily expanded the proceeding by other improper conduct. But when awarding fees under OCGA § 9-15-14 (a) or (b), the court "must limit the fees award to those fees incurred because of the sanctionable conduct."[3] Thus, "lump sum" or unapportioned attorney fees awards are "not permitted in Georgia."[4] Accordingly, we will vacate and remand for further fact-finding when "the trial court's order, on its face[,] fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why" it awarded one amount of fees rather than another under OCGA § 9-15-14.[5]

---

[3] *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009) (punctuation omitted).

[4] *Id.*

[5] *Trotman v. Velociteach Project Mgmt., LLC*, 311 Ga. App. 208, 214 (6) (715 SE2d 449) (2011) (punctuation omitted).

Additionally, in divorce and alimony cases, a trial court may award attorney fees under OCGA § 19-6-2 (a) (1), after "consider[ing] the financial circumstances of both parties." But when review of the record does not reveal whether the trial court based an attorney-fees award on OCGA § 19-6-2 or OCGA § 9-15-14, "the issue of attorney fees must be remanded for an explanation of the statutory basis for the award and any findings necessary to support it."[6]

Here, the trial court's order contains no references to either the statutory basis for, or the conduct underlying, its attorney-fees award. Indeed, the order merely provides that "[Van] is also awarded attorney's fees in the amount of $7,056.20 and expenses of litigation in the amount of $500.00." And the transcript of the hearing that led to the attorney-fees award likewise sheds no light on the statute or conduct

---

[6] *Ward v. Ward*, 289 Ga. 250, 251 (2) (710 SE2d 555) (2011) (punctuation omitted); *see Thrasher-Starobin v. Starobin*, 299 Ga. 12, 13 (785 SE2d 302) (2016) ("[I]f a trial court fails to make findings of fact sufficient to support an award of attorney fees under either OCGA § 19-6-2 or OCGA § 9-15-14, the case must be remanded to the trial court for an explanation of the statutory basis for the award and any findings necessary to support it." (punctuation omitted)); *Gilchrist v. Gilchrist*, 287 Ga. App. 133, 133-34 (1) (650 SE2d 795) (2007) (holding that a judgment devoid of findings supporting an award under OCGA § 9-15-14 "*must* be vacated and the case *must* be remanded for reconsideration" (punctuation omitted)).

underlying the award.[7] Accordingly, we vacate this portion of the trial court's order and remand for explanation of the statutory basis for the award and the findings necessary to support it.[8]

(c) Finally, Machelle takes issue with the divorce decree's reference to "retirement accounts" when she contends that the accounts at issue are not all retirement accounts—*i.e.*, because the Emergency Fund was a post-tax savings account and not a retirement account. But as with her first enumeration of error, Machelle fails to provide any citation to authority, in violation of our rules, and thus abandoned this argument.[9] Additionally, although Machelle contends that this reference is a "significant mistake," she fails to allege what, if any, harm resulted

---

[7] *Cf. Simmons v. Simmons*, 288 Ga. 670, 673-74 (6) (706 SE2d 456) (2011) (holding that trial court did not abuse its discretion in awarding attorney fees when it was possible to discern from the record the statutory basis for the court's award).

[8] *See, e.g.*, *Viskup v. Viskup*, 291 Ga. 103, 106 (3) (727 SE2d 97) (2012) ("When there is more than one statutory basis for the attorney-fee award and neither the statutory basis for the award nor the findings necessary to support an award is stated in the order and a review of the record does not reveal the basis of the award, the case is remanded for an explanation of the statutory basis for the award and the entry of any findings necessary to support it.").

[9] *See supra* note 2.

11

from referencing the accounts in this way. Thus, even to the extent that this reference is erroneous, it is harmless.[10]

2. In her second appeal, in Case No. A18A0515, Machelle challenges the trial court's order on the parties' competing petitions for contempt, arguing that the order constitutes an impermissible modification of a divorce decree in a contempt action. We agree.

It is well settled that a court "may not modify a divorce decree in a contempt order, but may interpret and clarify its previous decree."[11] And in order to determine whether an order is a clarification or a modification, the test is "whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification."[12] When a trial court awards an asset

---

[10] *See Driver v. Driver*, 292 Ga. 800, 804 (4) (741 SE2d 631) (2013) (holding that trial court's misidentification of documentary source of otherwise correct figure, which was supported by record evidence, was harmless).

[11] *Pollard v. Pollard*, 297 Ga. 21, 22 (771 SE2d 875) (2015).

[12] *Id.* at 23 (punctuation omitted); *accord Kaufmann v. Kaufmann*, 246 Ga. 266, 268 (3) (271 SE2d 175) (1980).

in a contempt proceeding that is different from that awarded in a divorce decree, the reviewing court looks to the nature of the asset awarded

> to determine whether it is equivalent to the asset awarded in the divorce proceedings. If it was in essence the same asset, the court did not improperly modify the terms of the decree, but merely construed the relevant provision to determine the intent of the decree. Conversely, if the court used the contempt proceeding to substantially alter the final decree, it amounted to an unauthorized modification.[13]

Here, the final divorce decree was plain and unambiguous: Van was to pay $147,690.30 in full to his attorney's escrow account, and his attorney was then to disburse $147,690.30 in full to Machelle within 30 days of the divorce decree being signed. It is undisputed that this order was drafted *by Van's attorney* and, thus, he is responsible for any failure to consider the tax implications of the plain and unambiguous wording of the divorce decree or in his arguments and presentation of evidence during the trial. Accordingly, the trial court's order on the competing motions for contempt did not "merely construe" the relevant portions of the divorce decree, which awarded a lump sum of $147,690.30 to Machelle with no reference to

---

[13] *Pollard*, 297 Ga. at 23 (punctuation omitted); *accord Cason v. Cason*, 281 Ga. 296, 297-98 (1) (637 SE2d 716) (2006).

tax implications, to be paid *in full* to an escrow account and then disbursed to her *in full* thereafter. Instead, the contempt proceeding and its resulting order substantially altered the final divorce decree by not only altering the amount to be paid to Machelle (due to tax considerations), but also the manner in which that amount was to be disbursed. Thus, the trial court's order in the contempt proceeding was unquestionably an unauthorized modification of the final divorce decree, and as a result, the order must be reversed.[14] Our holding does not, of course, relieve Van of his obligation to transfer to Machelle $147,690.30 as required by the divorce decree.

Because we reverse the trial court's order in the contempt proceeding, we need not address Machelle's remaining enumerations of error in Case No. A18A0515, which are that the court's order constitutes an impermissible modification of the divorce decree outside the term of court and that the court's factual findings are unsupported by the record.

---

[14] *See Killingsworth v. Killingsworth*, 286 Ga. 234, 236 (2) (686 SE2d 640) (2009) (reversing contempt-proceeding order that husband pay wife $1850 in cash in lieu of transferring half of his 401(k) funds to her as required by divorce decree when same constituted modification of decree when decree specified how wife's interest in 401(k) account would be calculated and manner in which transfer was to be accomplished, including requiring wife's counsel to prepare a qualified domestic relations order, which had not been done, and when contempt-proceeding order would have transmuted 401(k) award into a cash obligation presently due).

14

For all these reasons, in Case No. A18A0514, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. And in Case No. A18A0515, we reverse.

*Judgment affirmed in part, vacated in part, and case remanded for further proceedings in Case No. A18A0514. Judgment reversed in Case No. A18A0515. Doyle, P. J., and Mercier, J., concur.*